_____

MICHAEL C.,

                Plaintiff,

v.                                           1:18-CV-1115 (ATB)

COMM'R OF SOC. SEC.,

                Defendant.

_____

APPEARANCES:                         OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON     STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        JEAN M. DEL COLLIANO, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

      Currently before the Court, is a Social Security action filed by Michael C. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3). This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 6). The parties have each filed briefs (Dkt. Nos. 9 and 10) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 8.)[1]

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1971, making him 43 years old on the amended alleged onset date and 46 years old on the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and past work as laborer, painter, and warehouse worker. At the initial level, Plaintiff alleged disability due to a spine impairment, asthma, and depression. Plaintiff had lumbosacral back surgery in 2007.

### B. Procedural History

Plaintiff initially applied for disability insurance benefits and Supplemental Security Income on July 8, 2015, alleging disability beginning August 1, 2011. Plaintiff's applications were initially denied on October 6, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Asad M. Ba-Yunus on June 5, 2017, at which a vocational expert ("VE") also testified. (T. 27-63.) At the hearing, Plaintiff's attorney moved to amend the alleged onset date to July 30, 2014. (T. 34.) On September 8, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 7-21.) On August 13, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (T. 12.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2011, the alleged onset date.[2] (*Id.*) The ALJ further found that Plaintiff had severe impairments including low back pain secondary to degenerative disc disease and ruptured disc, status post lumbosacral back surgery, and asthma/chronic obstructive pulmonary disease ("COPD"). (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 13.) Specifically, the ALJ considered the 12.00 Listings (mental impairments). (*Id.*) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work

> except [he] may never climb ramps, stairs, ladders, ropes, or scaffolds, can no more than occasionally stoop, kneel, or crouch, []and only occasionally be exposed to unprotected heights, humidity, wetness, extremes of indoor cold and/or heat, and moving mechanical parts or dangerous machinery, and must avoid all pulmonary irritants.

(*Id.*) The ALJ determined, based on VE testimony, that Plaintiff was unable to perform any past relevant work, but identified several occupations existing in significant numbers in the national economy that Plaintiff could perform. (T. 16-17.) The ALJ therefore concluded that Plaintiff was not disabled. (T. 17.)

## D. Issues in Contention

In his brief, Plaintiff argues that the ALJ failed to make a ruling on Plaintiff's motion to amend the alleged onset date of disability. Plaintiff further contends that the ALJ relied on VE

---

[2] As discussed below, the ALJ's opinion, in several places, references the original alleged onset date and not the amended onset date of July 30, 2014.

testimony in response to a hypothetical question that posited less restrictive limitations than those in the ALJ's RFC finding. (Dkt. No. 9, at 5-8.) Plaintiff also argues the ALJ did not properly apply the treating physician rule. (*Id*. at 8-10.)

Defendant's brief argues the ALJ properly amended the disability onset date (Dkt. No. 10, at 5-7), and that any error relating to the ALJ's questioning of and reliance upon the VE constituted harmless error (*id*. at 7-10). Defendant also contends that the ALJ properly applied the treating physician rule and correctly found that Plaintiff could perform occupations existing in significant numbers in the national economy. (*Id*. at 7-12.) For the reasons stated below, the Court agrees with the Defendant and affirms the decision of the Commissioner.

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

> severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Disability Onset Date

#### 1. Applicable Law

##### a. Amended Alleged Onset Date

An individual's alleged onset date ("AOD") is the "first day they allege they became unable to perform substantial gainful activity." *Duval v. Colvin*, 13-CV-495 (GLS/ESH), 2014 WL 4637092, at *6 (N.D.N.Y. Sept. 16, 2014) (citing Social Security Ruling ("SSR") 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249, at *1 (S.S.A.1983)). "If a claimant decides to amend his or her AOD, he or she can do so by contacting [the Social Security Administration] via letter, telephone, visiting a field office, or by providing testimony at a hearing." Social Security Program Operations Manual System ("POMS") DI 25501.230 Amended Alleged Onset Date (effective Dec. 6, 2012).

##### b. Harmless Error

The harmless error analysis is applicable to Social Security cases. *See Thompson v. Comm'r of Soc. Sec.*, 10-CV-1085 (GLS/ATB), 2011 WL 5080239, at *13 (N.D.N.Y. Aug. 18, 2011) (noting that the harmless error standard is applied to Social Security actions in appropriate

circumstances) (citing *Johnson*, 817 F.2d at 986; *Jones v. Barnhart*, 02-CV-0791, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003); *Seltzer v. Comm'r of Soc. Sec.*, 07-CV-0235, 2007 WL 4561120, at *10 (S.D.N.Y. Sept. 26, 1995)). Further, an ALJ's errors in weighing the evidence or applying the law may be considered harmless where proper consideration of the evidence or law would not have changed the outcome. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose). "Courts have found typographical errors to be harmless if it is obvious from the opinion as a whole that the error is typographical and not substantive." *Van Valkenberg ex rel. B.G. v. Astrue*, 08-CV-0959 (DNH/VEB), 2010 WL 2400455, at *13 (N.D.N.Y. May 27, 2010) (citing *Brewerton v. Barnhart*, 235 F.R.D. 574, 578 (W.D.N.Y. 2006); *Lopez v. Comm'r of Soc. Sec.*, 2009 WL 2922311, at *12, n. 37 (E.D.N.Y. Sept. 8, 2009); *Brown ex rel. S.W. v. Astrue*, 05-CV-0985 (NAM/RFT) 2008 WL 3200246, at *13 n. 19 (N.D.N.Y. Aug. 5, 2008)); *Thompson v. Barnhart*, 75 F. App'x 842, 845 (2d Cir. 2003); *Wells v. Colvin*, 87 F. Supp. 3d 421, 433 (W.D.N.Y. Feb. 24, 2015).

### 2. Analysis

Plaintiff argues that the ALJ failed to make a ruling on Plaintiff's motion to amend the AOD. (Dkt. No. 9, at 5-6.) Specifically, Plaintiff contends the ALJ adjudicated "the entire

period from August 1, 2011, without re-opening his prior application and considering the evidence contained therein." (*Id*.) Plaintiff also contends that ALJ's decision is contradictory in discounting the opinion of Nurse Practitioner Susan Lasker "that was rendered in January 2014 prior to the [AOD]" while the ALJ also made a finding covering this period. (*Id*. at 6.) Plaintiff maintains that there are also other medical source statements pre-dating the amended AOD from Alexander Carangelo, RPA; Richard Adams, RPA; and Ann Marie Cavone-Banks, FNP, which were not addressed by the ALJ. (*Id*.; T. 245, 248, 251.) Plaintiff argues the ALJ's finding that he "was not disabled as of his initial [AOD] was based upon an incomplete record and did not consider all of the evidence for the time period in question." (*Id*. at 6.) The Court finds that these arguments are not persuasive for the following reasons.

Plaintiff initially asserted an AOD of August 1, 2011. (T. 66, 72.) At the June 2017 administrative hearing before ALJ Ba-Yunus, Plaintiff (through his attorney) made a motion to amend the AOD to July 30, 2014, the day after a prior denial of benefits by the Commissioner, to "clean[] the record up a little bit." (T. 34.) The ALJ responded "Okay, got it." (*Id*.) However, in the "Jurisdiction and Procedural History" section of his decision, the ALJ referenced Plaintiff's alleged disability beginning August 1, 2011. (T. 10.) The ALJ found Plaintiff "has not engaged in substantial gainful activity since August 1, 2011, the [AOD]." (T. 12.) In his final conclusion, the ALJ indicated Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision." (T. 17.)

As Defendant points out, the ALJ, within his analysis, cited to an independent examination conducted "[i]n June 2014, *just prior to the amended alleged date of disability . . . .*" (T. 14 (emphasis added).) The ALJ also noted that NP Lasker's January 2014 opinion was prior to the alleged date of disability. (T. 15.) The ALJ's analysis indicates that he was aware of

the amended AOD and implicitly granted the motion to amend the AOD. (T. 14-15, 34.) It appears that the references to the original August 1, 2011, AOD in the ALJ's decision are merely typographical or clerical errors which are not substantive and do not moot the ALJ's analysis based on the amended AOD. (T. 10, 12, 17.) *Van Valkenberg ex rel. B.G.*, 2010 WL 2400455, at *13. *See also Bertram v. Colvin*, No. 5:14-CV-109, 2015 WL 4545770, at *4 n.3 (D. Vt. July 27, 2015) (finding that the ALJ's inadvertent citation to the incorrect alleged onset date later in a decision was harmless when the ALJ cited to the correct onset date earlier in the decision).

In arguing that this matter should be remanded for an explicit ruling on Plaintiff's motion to amend his onset date or full consideration of potential re-opening of a prior application for the time period starting on August 1, 2011, Plaintiff's reliance on HALLEX I-2-9-10 is misplaced. (Dkt. No. 9, at 5-6.) As Defendant points out, the ALJ's reference to the original onset date does not imply a reopening of Plaintiff's prior case. The HALLEX provision states that an implied request for re-opening usually occurs "when a claimant alleges an onset date of disability within a previously adjudicated period or, after the ALJ issues a decision, the claimant sends the ALJ new and material evidence that relates to the earlier period at issue." (Dkt. No. 10, at 6-7; HALLEX I-2-9-10(B).) Clearly, Plaintiff in this case specifically requested to amend the onset date to avoid any overlap with the previously adjudicated period. Further, that HALLEX provision also indicates that if the ALJ has jurisdiction, but the additional evidence does not warrant reopening a prior determination or decision, the ALJ "[n]eed not make a finding on the issue of reopening the determination or decision if issuing an unfavorable decision." HALLEX I-2-9-10(B)(1).

The Court further finds that any error made by the ALJ in referring to the original AOD is harmless because the evidence of record and the ALJ's analysis, although not explicit, make it

clear that he granted Plaintiff's motion to amend his AOD. (T. 14-15, 34.) Any error made by the ALJ in referring to the original AOD does not trigger an implied reopening of Plaintiff's prior case because the analysis of the medical evidence was based on the amended onset date. (Dkt. No. 10, at 7.) *See, e.g., Brown v. Colvin*, No. 16-CV-3193, 2017 WL 3822891, at *8 n.5 (S.D.N.Y. Aug. 31, 2017)) (finding harmless error when the ALJ's failure to amend the onset date to a later date would not have changed the ultimate conclusion) citing *Miller v. Colvin*, No. 3:12-CV-01813, 2014 WL 2047903, at *6–7 (M.D. Pa. May 19, 2014) (finding harmless error when the ALJ cited an earlier onset date in his decision, but only analyzed the medical evidence after the later amended onset date).

Plaintiff's arguments regarding the opinions of NP Lasker (January 2014), and the earlier opinions of RPA Carangelo (March 2013), RPA Adams (March 2013), and FNP Cavone-Banks (writing for Dr. Noce in February 2013) are not persuasive. (Dkt. No. 9, at 6; T. 245, 248, 251, 363.) The ALJ considered NP Lasker's opinion, while recognizing that it pre-dated the July 30, 2014 AOD (by about six months). The ALJ provided other reasons for discounting NP Lasker's opinion, including that it was provided by a non-acceptable medical source, was inconsistent with the totality of the records, and addressed an ultimate issue reserved for the Commissioner. (T. 15, 363.) The other opinions cited by Plaintiff, but not discussed by the ALJ, were less recent than that of NP Lasker, and were rendered more than a year earlier than the AOD. (T. 15, 34.)

The Court further finds that the ALJ's failure to consider the opinions from RPA Carangelo, RPA Adams, and FNP Banks to be harmless because consideration of these opinions would not have changed the outcome of the ALJ's decision. The ALJ accorded little probative value to the January 2016 and May 2017 opinions of treating source, Dr. Cole, who found very

restrictive limitations similar to those identified by the other treating source opinions cited by Plaintiff.  (T. 15, 245, 248, 251, 363, 418-22.)  It is unlikely that weighing similar opinions which pre-dated the amended AOD would have changed the ALJ's analysis or ultimate decision, and therefore any failure to weigh these opinions constitutes harmless error.  *Cottrell*, 206 F. Supp. 3d at 810 (citing *Zabala*, 595 F.3d at 409); *Camarata*, 2015 WL 4598811, at *16; *Ryan*, 650 F. Supp. 2d at 217.[3]  Accordingly, the Court finds that the ALJ implicitly granted Plaintiff's application to amend the disability onset date and appropriately analyzed the evidence relevant to the time period after the AOD.  Remand is therefore not required on this basis.

**B.      Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence**

**1.   Applicable Law**

**a.   Treating Physician**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

---

[3] There is not a risk of an unadjudicated period because the time prior to Plaintiff's amended AOD was covered by the prior denial of benefits.  (T. 34.)

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### b. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Relevant Medical Evidence

### a. Dr. Cole's and NP Lasker's Treating Source Opinions

In January 2014, NP Lasker (with Ramon Bidot, M.D., possibly supervising) opined that Plaintiff continued to be totally disabled and was unable to lift/push/pull/stand for extended periods of time. (T. 363.) The ALJ noted that this opinion was rendered "prior to the alleged date of disability, provided by a non-acceptable medical source, is inconsistent with the totality of the records, and is on an issue reserved to the Commissioner." (T. 15.) The ALJ therefore did not adopt this opinion or afford it any significant weight. (*Id.*)

In January 2016, Dr. Cole rendered a diagnosis of lumbar radiculopathy since November 2015, with a guarded prognosis. (T. 418.) He noted that this condition was very bad if not treated, and that Plaintiff's medications included Oxycodone and Oxymorphone. (*Id.*) He opined that Plaintiff was moderately limited in sitting and very limited in walking, standing, lifting/carrying, pushing/pulling/bending, and stairs or other climbing, and that he could not be on his stomach. (T. 419.) Dr. Cole observed that there was serious damage to Plaintiff's right-sided lumbar spinal roots. (*Id.*)

In May 2017, Dr. Cole listed diagnoses including post-laminectomy right discectomy, osteoarthritis in the shoulder, and chronic pain syndrome with a guarded prognosis. (T. 420.) He noted that Plaintiff's pain or other symptoms were severe enough to interfere with attention and concentration 11-15% of the time during a typical workday. (T. 420.) Dr. Cole opined that Plaintiff could walk one block, sit for 15 minutes at a time, and stand for 10 minutes at a time for a total of less than two hours. (T. 420-21.) He would need to walk around every 15 minutes for five minutes, would require a job permitting shifting positions at will, and would need to take unscheduled breaks every day for 10 minutes per episode. (T. 421.) Dr. Cole also stated that Plaintiff must sometimes use a cane or other assistive device and that he was not competitive because he could rarely lift less than 10 pounds. (*Id.*) Plaintiff could occasionally look down, turn his head right or left, and look up; rarely hold his head in a static position; never twist, stoop, crouch, squat or climb ladders; and occasionally climb stairs. (T. 422.) Dr. Cole observed that Plaintiff could not get to work at a given time of the day, so things he could do at work were irrelevant. (*Id.*) Dr. Cole opined that Plaintiff could not travel or remain in one position for more than 15 minutes without a five to ten-minute break, he would be absent more than four days per month, and he was not capable of sustaining full-time work. (*Id.*) The earliest date that these symptoms and limitations applied, according to Dr. Cole, was 2006. (*Id.*)

The ALJ stated: "[a]lthough this treating source outlined very significantly restricted functioning, his accompanying treatment records do not support the drastic limitations." (T. 15, 406, 408-09.) The ALJ also noted that it was around June 2016 that "treatment sessions were made further apart with three-month intervals between visits, which is not consistent with the opinion offered." (T. 15.) The ALJ observed that "[t]he frequency and intensity of problems simply are not documented, rendering the opinions less persuasive th[a]n is the actual treatment

notes, particularly the most up-to-date opinion that details a ten to fifteen minute limitation on sitting and standing." (T. 15, 420-22.) The ALJ, therefore, accorded little probative value on Dr. Cole's opinions. (T. 15.)

### b. Dr. Puri's Consultative Opinion

In September 2015, consultative examiner Kautilya Puri, M.D., noted that Plaintiff appeared in no acute distress, had a normal gait and stance, could stand on his heels and toes although he stated he could not walk on them, and his squat was markedly less than halfway decreased. (T. 387). On examination, Plaintiff's lumbar spine showed decreased flexion and extension with "local tenderness on palpation movement" and he had a negative straight leg raising test bilaterally. (T. 387-88.) Plaintiff had a decreased right knee jerk and decreased vibratory sensation in the right lower extremity. (T. 388.) An x-ray of the lumbosacral spine showed straightening. (T. 390.) Dr. Puri diagnosed low back pain secondary to degenerative disc disease status post lumbosacral back surgery with radiculopathy, asthma, and depression. (*Id.*)

Dr. Puri opined that Plaintiff did have any objective limitations to communications or fine motor or gross motor activities, but he had mild limitations to his gait and to his activities of daily living; mild limitation to squatting, bending, stooping and kneeling; and moderate limitation to lifting weight. (*Id.*) Dr. Puri recommended that Plaintiff not work in an environment which increases respiratory complaints. (*Id.*) The ALJ noted that, "[w]hile this is not quantified, it appears to be slightly underwhelming and a more restrictive level of functioning has been incorporated into the established residual functional capacity. As such, slightly less than great weight is provided to this consultative examiner's opinion." (T. 15.)

### 3. Analysis

Plaintiff argues that the ALJ did not properly apply the treating physician rule because he failed "to comprehensively set forth his reasons for not giving Dr. Cole's opinions controlling weight" and "failed to explicitly consider the relevant factors for weighing a treating source opinion in the absence of controlling weight." (Dkt. No. 9, at 8-10.) The Court finds these arguments unpersuasive for the following reasons.

The ALJ's analysis of Dr. Cole's opinions did provide adequate, specific reasons for the weight afforded to them. (T. 15.) As recounted above, the ALJ found that Dr. Cole's treatment notes did not support the drastic limitations opined and that the frequency and intensity of problems were simply not documented in those treatment notes. (*Id.*) The ALJ noted Dr. Cole's opinion in January 2016 that Plaintiff was very limited in walking, standing, lifting and carrying. However, the doctor's records from that time failed to document any objective musculoskeletal findings, only detailing Plaintiff's own complaints and noting some atrophy of the right lower extremity, an antalgic gait, spasms, and edema in follow-up visits. (T. 15, 405, 408-09, 418-19.) The ALJ also concluded that the increase in time between Plaintiff's visits to Dr. Cole was not consistent with the restrictive medical opinions offered. (T. 15.)

The ALJ's analysis indicates that he considered Dr. Cole's opinions and related treatment records closely in determining the weight to afford to these opinions. (*Id.*) The ALJ's analysis and RFC determination are further supported by his consideration of the other medical opinions of record. The ALJ afforded slightly less than great weight to Dr. Puri's opinion that Plaintiff had no objective limitations for fine and gross motor skills and only mild limitations to his gait, activities of daily living, squatting, bending, stooping, and kneeling. Similar opinions from this consulting examiner have been found to support a light work RFC finding, often notwithstanding

contrary treating physician opinions, when properly evaluated by the ALJ.  See, e.g., *King v. Comm'r of Soc. Sec.,* No. 1:15-CV-1032 (GTS/WBC), 2016 WL 6833058, at *3-4 (N.D.N.Y. Oct. 13, 2016) (light-work RFC supported by substantial evidence, including the opinion of Dr. Puri that plaintiff did not have any objective limitations to fine motor or gross motor activity; moderate limitations to squatting, bending, stooping, and kneeling; and with mild limitations to her gait and to her activities of daily living), Report and Recommendation adopted, 2016 WL 6833991 (N.D.N.Y. Nov. 18, 2016); *Garber v. Astrue*, No. 1:10-CV-845 (GTS/DEP), 2012 WL 1069017, at *7-12 (N.D.N.Y. Mar. 2, 2012) (the ALJ's light-work RFC finding draws considerable support from the report of Dr. Puri's consultative examination, which concluded that plaintiff had no objective limitations in fine motor or gross motor activities, gait, or activities of daily living), Report and Recommendation adopted, 2012 WL 1069014 (N.D.N.Y. Mar. 29, 2012); *Miller v. Comm'r of Soc. Sec.*, No. 1:13-CV-1388 (GLS/ESH), 2015 WL 1383816, at *2, 6, 8 (N.D.N.Y. Mar. 25, 2015).[4]

The Court finds that the ALJ adequately considered the regulatory factors in weighing Dr. Cole's opinion.  (T. 15.)  Within his RFC analysis, the ALJ noted Plaintiff's treatment with Dr. Cole and stated: "despite the positive and significant diagnostic findings, visits went from once every two months to quarterly visits, therefore once again substantiating the stability of the claimant's symptoms."  (T. 14-15, 402-15.)  Further, the ALJ also acknowledged that Dr. Cole was "a specialist in physical and rehabilitation medicine."  (T. 14.)  After reviewing the opinions from Dr. Cole and his treatment notes, the ALJ concluded the opinions were less persuasive than the actual treatment notes.  (T. 15.)  It was within the ALJ's purview to consider the evidence

---

[4] The ALJ afforded no significant weight to NP Lasker's opinion, but he fully assessed the range of limitations in the opinion of this treating source, which was provided before the amended onset date.  (T. 15.)

(including Dr. Cole's opinions and treatment notes) and resolve any inconsistencies therein. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014).  In sum, the Court finds that the ALJ's analysis of the opinion evidence is supported by substantial evidence and that remand is not required on this basis.

### C.  The ALJ's Step Five Determination is Supported by Substantial Evidence

#### 1.  Applicable Law

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

#### 2.  Analysis

Plaintiff argues that the ALJ improperly relied on VE testimony in response to a hypothetical question that was less restrictive than the RFC finding.  The hypothetical question assumed the ability to **frequently** kneel and crouch, while the RFC included limitations for **occasional** kneeling and crouching.  (Dkt. No. 9, at 6-8.)  Plaintiff also contends that the Court should not find this error harmless by relying on the descriptions of the positions identified by

the VE found in the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations because that would require the Court to engage in a *post-hoc* rationalization and to presume the VE would have testified that the positions identified are performed exactly in line with such descriptions. (*Id*. at 7-8.). Notwithstanding these arguments, the Court finds that any error at Step Five was harmless because it would not have affected the ALJ's ultimate determination that Plaintiff could perform the identified occupations. As Plaintiff acknowledges, the DOT and Selected Characteristics of Occupations indicate that the positions identified by the VE and ALJ do not require kneeling or crouching. (Dkt. No. 9 at 7.)

Here, the ALJ determined Plaintiff had the RFC to perform light work with limitations including no more than occasional stooping, kneeling, and crouching. (T. 13.) The ALJ then found, based on the VE testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy including routing clerk (DOT# 222.687-022), survey worker (DOT# 305.367-054), and collator operator (DOT# 208.685-010). (T. 17, 55-62.)

When questioning the VE at the administrative hearing, the ALJ posed several hypothetical questions, including one for light work with frequent stooping, kneeling, or crouching. (T. 56.) The VE indicated the three identified jobs (routing clerk, survey worker, and collator operator) would be available with these frequent non-exertional limitations. (T. 55-56.) The ALJ then asked a hypothetical indicating occasional stooping, but did not otherwise mention kneeling or crouching. (T. 57.) The VE indicated the three jobs would still be available given the hypothetical including the occasional stooping limitation. (*Id*.) The ALJ's RFC determination includes limitations to occasional stooping, kneeling, and crouching while the VE testimony does not directly address occasional kneeling or crouching. (T. 13, 55-57.)

As defendant argues, the "the inconsistency between the hypothetical and the RFC has no bearing on the final decision in the case" because the identified positions do not require any kneeling or crouching. (Dkt. No. 10, at 7-9.) Reliance on the DOT and Selected Characteristics of Occupations is **not** the type of *post-hoc* rationalization of an ALJ's decision that are disfavored by case law. *See, e.g., Allen v. Astrue*, No. 6:05-CV-101NAM/GJD, 2008 WL 660510, at *10–11 (N.D.N.Y. Mar. 10, 2008) (in determining that an alleged inconsistency between the hypothetical presented to a VE and the AJL's RFC was harmless error, the Court looked to the DOT profiles to document that the exertional requirements of the positions were ultimately consistent with the ALJ's RFC). Remand on this basis would serve no purpose.

**ACCORDINGLY**, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment be entered for the **DEFENDANT.**

Dated: December 30, 2019

Andrew T. Baxter
U.S. Magistrate Judge